# Exhibit D

2013 WL 249392
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Tyrone BERRY, Plaintiff,
v.
JETBLUE AIRWAYS, Defendant.

No. 11–CV–1888 (RRM)(LB). | Jan. 23, 2013.

**Attorneys and Law Firms**

Tyrone Berry, St. Cloud, FL, pro se.

Nicholas H. De Baun, Tara M. Conroy, Seyfarth Shaw,
LLP, New York, NY, for Defendant.

### *MEMORANDUM AND ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

**\*1** Plaintiff Tyrone Berry ("Berry"), proceeding *pro se,*
brings this action against Defendant Jetblue Airways
("Jetblue") for race discrimination in violation of Title
VII, 42 U.S.C. § 2000e *et seq* . Jetblue has moved to
dismiss Berry's complaint, arguing that his action is
barred by the applicable statutes of limitation. For the
reasons below, Jetblue's motion is GRANTED and
Berry's complaint is DISMISSED, unless, within thirty
days of the date of this Memorandum and Order, he can
demonstrate by sufficient showing, as described herein,
grounds for equitable tolling of his Title VII claim.

### BACKGROUND

The following background is derived from the facts
alleged in Berry's complaint and in his charge filed with
the Equal Employment Opportunity Commission
("EEOC").*See* *Vietnam Ass'n for Victims of Agent
Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d
Cir.2008) (requiring the court to accept as true all factual
allegations in the complaint); *Holowecki v. Fed. Express
Corp.,* 440 F.3d 558, 565–66 (2d Cir.2006) (relying upon
facts from plaintiff's filings with the EEOC on a Rule
12(b)(6) motion to dismiss without converting it into a
motion for summary judgment because the filings are

integral to the complaint).

Berry, who self-identifies as African American and Black,
was employed as a pilot for Jetblue. (Compl.(Doc. No. 1)
at 3.) Sometime during his employment, he exchanged
phone numbers with a customer who had been on a flight
Berry piloted. (*Id.* at 4.) Berry was off-duty when he and
the customer exchanged phone numbers. Berry and the
customer then traded phone calls. (*Id.*) One day, Berry
called the customer. A man answered the phone and said
derogatory and racist things to him. The man also
threatened Berry, stating if Berry ever called the
customer—his girlfriend—again, the man would have
Berry fired. Berry never called the customer again. (*Id.* at
5.)

Jetblue found out about this incident on April 17, 2008.
(*Id.*) On June 2, 2008, Jetblue told Berry that they knew
about the incident. Jetblue requested a statement from
Berry to "clear up the matter," and told him that his job
was not in danger. Berry provided a statement, explaining
that he was off-duty when the customer approached him.
She freely gave him her number and took his.(*Id.* at 4.)
Berry alleges that, even though Jetblue told him that his
job was not in jeopardy, when they approached him on
June 2, they "had already decided to fire" him. (*Id.* at 5.)
According to his charge filed with the EEOC, Jetblue
fired Berry on June 4, 2008. (Ex. A. to De Baun Decl.
(Doc. No. 16) at 7.)

In August 2008, Berry learned from one of the chief pilots
that another chief pilot, Craig Hoskins, made "several
racial slurs" when discussing Berry's case. (Compl. at 5.)
Moreover, the customer who accused Berry of
inappropriate behavior was white. (Compl. at 5; Ex. A to
De Baun Decl. at 9.)

Eventually, Berry was able to prove that the customer
with whom he exchanged phone numbers had contacted
him. Jetblue then reinstated Berry. (*Id.* at 6.) As part of
his reinstatement, Berry was transferred from Orlando to
John F. Kennedy Airport ("JFK") in New York. (Ex. A to
De Baun Decl. at 8.) He also had to commute from his
home in Florida to JFK for ten months, costing him
thousands of dollars on hotels and other costs. (*Id.* at 9.)
He also had to attend sexual harassment and anger
management classes. Jetblue awarded Berry partial back
pay for the time he was out of work, but was not given
any money for his retirement. (*Id.*)

**\*2** Berry filed an EEOC charge claiming race
discrimination on April 22, 2009. (Ex. A. to De Baun
Decl. at 5.) On December 27, 2010, the EEOC dismissed

Berry's charge and issued a right-to-sue letter. (Ex. B. to De Baun Decl. at 12.) Berry filed this action on April 15, 2011. (*See* Compl.)

### STANDARD OF REVIEW

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."*Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008) (internal quotation marks omitted). Therefore, the Court construes Berry's complaint with "special solicitude" and interprets it to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint need not contain " 'detailed factual allegations,' " but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 678 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)).

### DISCUSSION

Berry claims that Jetblue unlawfully discriminated against him on the basis of race when terminating him and then reinstating him, but on probation and without back pay. Jetblue moves to dismiss Berry's complaint in its entirety because first, his EEOC charge was not timely filed and second, his federal complaint was not timely filed. Berry responds that both were timely filed. The Court addresses each in turn.

#### A. *Timeliness of the EEOC Charge*

Pursuant to Title VII, a charge of discrimination must be filed with the EEOC within 180 days of any alleged unlawful employment practice or 300 days where there is a state or local agency with authority to grant or seek relief from such practice. *Robles v. Cox & Co.,* 841 F.Supp.2d 615, 625 (E.D.N.Y.2012) (citing 42 U.S .C. § 2000e–5(e)(1))."Because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days after the alleged occurrence of an unlawful employment practice."*Robles,* 841 F.Supp.2d at 625 (citing § 2000e–5(e) (1) and *Harris v. City of New York,* 186 F.3d 243, 247 n. 2 (2d Cir.1999))."Failure to timely file a charge with the EEOC renders the subject claim time-barred, preventing a claimant from bringing her claim in federal court."*Robles,* 841 F.Supp.2d at 625–26 (citing *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 133–34 (2d Cir.2003)).

**\*3** According to Jetblue, Berry's EEOC charge was not timely because he filed it more than 300 days after his termination. He was terminated on June 4, 2008, and filed a charge with the EEOC on April 22, 2009, 322 days after he was terminated. Berry contends that the 300–day clock does not begin to run until an individual discovers the discrimination that had taken place. He alleges that his 300–day clock began to run on August 28, 2008, the date he "received information which led [him] to believe that [he] was discriminated against."(Pl.'s Opp'n to Def. Mot. to Dismiss (Doc. 20) at 3.) On August 28, 2008, Berry learned that "policies were not followed and that other leaders had used racial remarks during my investigation and termination.... Until then I did not know why I had been unfairly terminated, nor did I know that my race had played any part in it."(*Id.* at 5.) If Berry is correct, his EEOC charge would be timely filed, as it was filed 236 days after August 28, 2008.

Berry, however, is not correct. The court in *Lugo–Young v. Courier Network, Inc.,* No. 10–CV–3197, 2012 WL 847381 (E.D.N.Y. Mar. 13, 2012) confronted a factual scenario very similar to that presented here. There, the plaintiff was fired on a particular date, but asserted that she was unaware of the discriminatory animus motivating her termination until a later date. The court reasoned that

the " 'timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.' " *Lugo-Young,* 2012 WL 847381 at *4 (quoting *Morse v. Univ. of Vt.,* 973 F.2d 122, 125 (2d Cir.1992)). An employee has notice of an allegedly discriminatory act "on the date that the employer has clearly communicated to the employee its decision to terminate him." *Lugo-Young,* 2012 WL 847381 at *5. The employee's awareness of the defendant's potentially discriminatory motives for the termination is irrelevant to the inquiry. *See id.*(citing cases). As such, the court held that the date the plaintiff was terminated, not the date she became aware of potentially discriminatory motives for the termination, served as the day from which to count the 300–day time to file an EEOC charge.

Applying that rule here, it is clear that Berry's EEOC charge was untimely. It was filed on April 22, 2009, 322 days after June 4, 2008, the day he was terminated. Filing a timely EEOC charge is a prerequisite to filing a Title VII claim in federal court. *See Robles,* 841 F.Supp.2d at 625–26. Berry has not satisfied that prerequisite, or presented any reasons that warrant equitable tolling. *See Miller v. Int'l Telephone & Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.1985) (noting that equitable tolling of the 300–day clock is permitted where the employee demonstrates that he was "actively misled by his employer ... [or] was prevented in some extraordinary way from exercising his rights"). As such, the untimeliness of his EEOC charge necessitates dismissal.

**B.** *Timeliness of this Suit*
**\*4** A Title VII claim must be filed in federal court within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Sherlock v. Montefiore Med. Ctr. .,* 84 F.3d 522, 525 (2d Cir.1996) (citations omitted). Absent evidence to the contrary, a court assumes that the EEOC mailed the right-to-sue letter on the date shown on the notice and that the plaintiff received the notice three days after the mailing.*Sherlock,* 84 F.3d at 525–26 (citations omitted).

According to Jetblue, Berry's federal suit is untimely because he filed it beyond the ninety-day limit. The EEOC right-to-sue letter is dated December 27, 2010. Presuming it was mailed that day, as the Court does, Berry received it on December 30, 2010. He filed this suit on April 15, 2011, 106 days after December 30, 2010. In opposition, Berry argues that he received the right-to-sue letter on January 20, 2011 because of the nature of his job as an airline pilot and due to the holidays. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3.) If counting from January 20,

2011, his suit would be timely, as it was filed eighty-five days after receiving the right-to-sue letter.

Jetblue is correct. As mentioned above, the Court presumes that a Berry received the right-to-sue letter on December 30, 2010, three days after the date stamped on the letter. *See Sherlock,* 84 F.3d at 525–26. While this presumption is rebuttable, Berry has failed to do so. A plaintiff can rebut this presumption by presenting "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its type-written date or that it took longer than three days to reach her by mail."*Id.* at 526.Berry's argument that, in essence, he was not at home to receive the right-to-sue letter does not suffice. In addition to being unsworn, the assertion does not indicate that the notice was mailed after December 27, 2010 or that it took longer than three days to reach Berry. Merely being absent to retrieve the notice does not rebut the presumption. *See Johnson v. St. Barnabas Nursing Home,* 368 Fed. Appx. 246, 248 (2d Cir.2010) (summary order) (disregarding plaintiff's unsupported allegation that she received right-to-sue letter more than three days after the date stamped on the notice); *Barbosa v. Continuum Health Partners, Inc.,* 716 F.Supp.2d 210, 218–19 (S.D.N.Y.2010) (being out of town and thus unable to retrieve the notice does not rebut the presumption of receipt of the right-to-sue notice three days after mailing); *Davis v. Columbia Univ.,* No. 09–CV–9581, 2010 WL 2143665 at *4 (S.D.N.Y. May 26, 2010) (same).

Title VII requires the filing of a federal lawsuit within ninety days of the plaintiff's receipt of the right-to-sue letter; Berry did not comply with this prerequisite. *See Sherlock,* 84 F.3d at 525. Berry presents no reasons to excuse the untimeliness. *See South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11–12 (2d Cir.1994) (noting that equitable tolling of the ninety-day time limit is warranted where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," has been led by the court "to believe that she had done all that was required of her," or "has received inadequate notice," but is not warranted where the plaintiff has failed "to act diligently"). As such, the untimeliness of his federal complaint necessitates dismissal.

**CONCLUSION**

**\*5** For the above reasons, defendant's motion to dismiss is GRANTED. Plaintiff's complaint is DISMISSED, unless, within thirty days of the date of this Memorandum and Order, plaintiff can demonstrate by sufficient

showing that there exist sufficient facts on which this Court may equitably toll the time to exhaust his administrative remedies. Should he wish to so do, plaintiff shall submit supporting affidavits and/or other materials within thirty days of the date of this Memorandum and Order, together with a memorandum of law supporting his claim.

The Clerk of the Court is directed to mail a copy of this Order to the plaintiff and note the mailing on the docket.

SO ORDERED.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.